UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| RICHARD K. TAYLOR, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 07-189-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| D.L. STINE, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*    \*\*    \*\*    \*\*    \*\*

Petitioner Richard K. Taylor is currently confined in the United States Penitentiary
McCreary ("USP-McCreary") in Pine Knot, Kentucky.   Taylor has filed a *pro se* petition for a
writ of habeas corpus pursuant to 28 U.S.C. §2241.  The named Respondent is Donald L. Stine,
the Warden of USP-McCreary. Taylor has also filed a motion seeking injunctive relief directing
Warden Stine to release him immediately to a Residential Re-Entry Center ("RCC").[1]   [See
Record No. 3]

ALLEGATIONS OF THE PETITION

1. Conviction and Sentence

On September 16, 2005, Taylor pled guilty in the United States District Court for the
Northern District of Ohio (Cleveland) to:  (1) making, uttering and possessing counterfeit

---

[1] RCC's were previously referred to as Community Corrections Centers ("CCC")and are also known
as "halfway houses."  Federal prisoners are typically released into a RCC as part of their transition back into
society.  BOP Program Statement 7310.04

Dockets.Justia.com

securities of an organization in violation of 18 U.S.C. §513(a) and (2) identity theft in violation of 18 U.S.C. §1028(a)(7).  *See United States of America v. Richard K. Taylor*, Criminal Action No. 1:05-CR-00303-9 (Hon. John R. Adams, presiding) ("the Trial Court").   On December 13, 2006, he was sentenced to a term of imprisonment of 28 months with a 3-year term of supervised release.   Taylor has alleged in his petition that:

> "At sentencing the Judge Ordered Taylor to enter drug treatment programming while imprisoned, and expressed doubt that Taylor would readjust to society properly without substantial assistance.  He advised the probation department to bring him back before the Court at the first hint of a violation."

[Record No. 3-1, p. 2]

## 2.  Demand for RCC Placement

Taylor alleges that he has only 90 days (presumably from June 7, 2007) remaining until the completion of his sentence.  [Record No. 3-1, pp. 2-3]  He complains that the BOP does not intend to place him in an RCC until 30 days prior to the expiration of his sentence.[2]  He further alleges that the Respondent has violated his due process rights under the Fifth Amendment of the United States Constitution by refusing to consider him for immediate placement in an RRC. Taylor claims that beginning January 25, 2007 (the day he was transferred to USP-McCreary), prison staff began to delay processing his requests for RCC placement.

---

[2]  Taylor states that the BOP failed to calculate his date of release into an RCC on his SENTRY generated Sentence Computation sheet. [Record No. 2-2, p.9]   He did, however,  attach to his Petition a document entitled "Sentencing Monitoring Computation Data as of 5-31-07" ("SMCD") [Record No. 2-2, p.16]

The SMCD reflects that *8-29-07* is Taylor's "Statutory Release Date Projected." [*Id*].  Taylor claims that he will be transferred to an RCC thirty days prior to his projected release date.  Thus, his RCC placement would begin on or around July 29, 2007, or early August 2007.

Specifically, Taylor asserts that the prison and/or staff: (1) never told him about possible placement in an RCC; (2) failed to place him in appropriate orientation programs; (3) did not have a case manager; (4) gave him inaccurate information about his eligibility for pre-release programs such as RCC placement; (5) failed to inform him about the Residential Drug Abuse Program;[3] and (6) unreasonably blamed his failure to obtain an earlier RCC placement on the fact that he was not transferred to USP-McCreary until January 25, 2007.

### 3. Petitioner's Legal Argument

Taylor complains that a 30-day period in an RCC is far less than the six-month period which the BOP afforded federal inmates under the regulations in effect prior to December 13, 2002. Taylor further complains that the 30-day placement in an RCC is even less than 10% of his 28-month sentence. He asserts that the BOP arrived at his pre-release preparation date by applying 28 C.F.R. §570.20-21, which limits a CCC placement for the service of the last months of a prisoner's sentence to a length of time not to exceed 10 percent of the prisoner's sentence.

Taylor argues that the BOP's current "10% policy" regarding placement in RCC's (which has been followed since 2002) should not be applied to him. He argues that the "10% policy" is contrary to Congressional intent and that several federal appellate courts have found the BOP's policy to be unconstitutional. Taylor cites various cases – including *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 683 (E.D. Ky. 2004) – in support of his claim that the BOP is unable to provide him with adequate pre-release preparation.

---

[3] The RDAP is a program through which certain federal inmates receive various incentives for involvement in drug abuse treatment programs. 28 C.F.R. §550.57. The BOP has discretion to allow an inmate a sentence reduction of up to one year if the inmate was convicted of a nonviolent offense and has successfully completed a substance abuse treatment program. 18 U.S.C. §3621(e)(2)(B).

Taylor contends that if the BOP made its determination using the relevant statutes (28 U.S.C. §§3621(b) and 3624(c)) and not the 10% rule contained in the regulations, then he would be able to be at a CCC for as long as six months. And because he is now serving the last six months of his sentence, he would be eligible immediately.

Taylor seeks injunctive relief in the form of immediate placement in an RCC. He explains that he has suffered from drug addiction for many years and argues that a longer term in an RCC would enable him to transition back into society more effectively. In his motion seeking injunctive relief, Taylor states that he:

> needs to establish ties to the community for his addiction problems, with the focus on seeking employment in a work environment more suitable for a person in recovery. . . . [and that he] needs more than a few weeks in order to gain placement in an established recovery ("AA/NA) or 3/4 type Transitional House.

[Record No. 3, p. 3]

Taylor contends that if he is required to complete his administrative remedies, he would suffer irreparable injury and could not complete the administrative remedy process before his release date.

<u>DISCUSSION</u>

1. <u>Comments of the Trial Court</u>

Taylor claims that the sentencing judge specifically ordered him to participate in a drug treatment program while he was imprisoned in a BOP facility. However, Taylor's interpretation of the sentencing judge's comments is much broader than the language of the Judgment. According to the Public Access to Court Electronic Records (PACER) website, the "Judgment in a Criminal Case" issued by the Trial Court provides as follows regarding drug treatment:

> The defendant shall participate in a substance abuse treatment program, either inpatient or outpatient, at the direction of the probation officer, which may include testing to determine if the defendant has reverted to substance abuse.

[*See* Judgment, 05-CR-303-09-JRA, Record No. 221, p. 3 of 6.]

The Judgment did not specifically state that Taylor should be placed in an RDAP program *while he is in federal custody*.   Instead, the Trial Court referred to the Petitioner being treated on either an "inpatient or an outpatient" basis.  This wording is not consistent with status as an inmate in a BOP facility.   Additionally, the Trial Court referred to the probation officer, an official who is not involved while the Petitioner is confined in a BOP facility. And while it is possible that Judge Adams may have made specific comments about Taylor's need to participate in a BOP drug treatment program, the Court cannot know that for a fact.  The Petitioner did not attach a transcript of his December 13, 2006 sentencing hearing before the Trial Court .[4]

Inasmuch as Taylor is seeking injunctive relief from this Court, it is incumbent on him to provide the Court with all relevant materials (such as transcripts from the sentencing court which are not otherwise available to this Court) in support of his request for emergency relief.

### 2.  Administrative Exhaustion

Prisoners who seek relief under 28 U.S.C. §2241 are ordinarily required to exhaust administrative remedies before filing a habeas action in district court. *Little v. Hopkins*, 638 F.2d

---

[4]   The docket sheet from the Trial Court lists two entries:  (1) the "Transcript of Sentencing Proceedings as to Richard Taylor held on 12/12/06" [Record No. 271] and (2) the "Transcript of Plea Proceedings as to Richard Taylor held on 9/16/05" [Record No. 272].  This Court was not able to access either of the two filed transcripts via PACER hyperlinks.  One docket entry states as follows:

> To obtain a bound copy of this transcript please contact Court Reporter Richard G. DelMonico at 330-252-6021.  Complete document on file, 27 pages.

[*United States v. Taylor*, 05-CR-303-JRA, Record Nos. 271 (as to Sentencing Transcript)]

953, 953-954 (6th Cir.1981) (per curiam); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th

Cir.1996)); *Sesi v. United States Bureau of Prisons*, 238 F.3d 423, 2000 WL 1827950 (6th

Cir.(Mich.) December 7, 2000) (Table) (Unpublished Deposition) (a federal prisoner must first

exhaust his available administrative remedies before filing a §2241 petition); *United States v.

Oglesby*, 52 Fed. Appx. 712, 714, 2002 WL 31770320 *2 (6th Cir.2002) (citing *United States

v. Wilson*, 503 U.S. 329, 335 (1992)).  Exhaustion is a judicially-created requirement for §2241

petitions, and the Court may waive the requirement if it finds exhaustion to be futile.  *See Davis

v. Keohane*, 835 F.2d 1147 (6th Cir. 1987); *Manakee Professional Medical Transfer Service, Inc.

v. Shalala*, 71 F.3d 574 (6th Cir. 1995).  Further, resort to administrative remedies is only futile

if there has been "a prior indication from the agency that it does not have jurisdiction over the

matter or it has evidenced a strong position on the issue together with an unwillingness to

reconsider." *James v. United States Dept. of Health and Human Services*, 824 F.2d 1132, 1139

(D.C. Cir. 1987).

The administrative remedies for federal prisoners bringing a petition under 28 U.S.C.

§2241 are contained in 28 C.F.R. §§542.10-16 (1997).  Section 542.13(a) requires that an inmate

first informally present his complaint to the staff (BP-8 form) before filing a formal request for

an administrative remedy.  If the inmate cannot informally resolve his complaint with staff, he

may submit the formal written complaint (BP-9) to the warden.  An inmate who is not satisfied

with the warden's response may submit an appeal (BP-10) to the appropriate regional director

within 20 calendar days of the date the warden signed the response.  Finally, if dissatisfied with

the response of the regional director, the inmate he may submit an appeal (BP-11) to the office of the BOP's General Counsel.[5]

Taylor apparently seeks to hort-circuit the BOP exhaustion process, alleging that he should receive emergency relief because there are only a few months remaining until his release. The Court notes that Taylor claims that the prison staff at USP-McCreary allegedly began stalling his efforts to obtain an early pre-release date as far back as January 25, 2007. Specifically, he asserts that he did not learn about possible pre-release opportunities (such as RCC placement) until late March 2007. [Petitioner's Affidavit, Record No.3-1, p. 2] Taylor states, "I did not learn about this [RCC] until I accidentally walked into a Pre-Release class and was made aware of it." [*Id*] He claims that immediately thereafter he began to exhaust his administrative remedies. However, Taylor's attachments indicate that he did not submit an Informal Resolution Form to prison staff until May 21, 2007. [*See* Record No 2-2, p. 14.] Petitioner now seeks immediate emergency relief.

Having reviewed the relevant materials and arguments, the Court is not inclined to grant the motion for expedited review. One of the reasons for the exhaustion of administrative remedies is to prepare a record for proper review. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980). In addition, as discussed below, Taylor has not demonstrated that he is entitled to injunctive relief.

### 3. The Propriety of Injunction Relief

---

[5] The BOP's response times are established in 28 C.F.R. §542.18, which provides that once the inmate has filed the proper form, "response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days." *Id*.

The factors to be considered before granting a preliminary injunction are: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

Considering the first factor in relation to the facts in this case, Taylor's likelihood of success on the merits is questionable. Regarding the BOP's interpretation of §3621(b), decisions which have ruled that the regulations' 10% rule is invalid as being contrary to the plain meaning of the statute are not controlling in this circuit. *See Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007); *Goldings v. Winn*, 383 F.3d 17, 28-29 (1st Cir. 2004); and *Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir. 2004).

Further, in *Dismas-Charities, Inc. v. United States Department of Justice*, 401 F.3d 666, 668 (6th Cir. 2005), the Sixth Circuit rejected the rationale of *Goldings* and *Elwood* regarding the BOP's implementation of its 10% rule. The ultimate decision in *Dismas-Charities* did not, however, turn on any interpretation of 18 U.S.C. §§3621(b) or 3624(c) or any analysis of the current regulation's validity. Instead, the court held that the plaintiff who had brought the action lacked standing and that the BOP could use the new rule as an interpretation of the statutes without it being formally promulgated under the Administrative Procedures Act. This appears to have been the Sixth Circuit's last word on the issue.

-8-

Even considering cases such as *Wedelstedt*, this Court would be reluctant to second-guess the BOP's decision to limit Taylor's tenure in an RCC/CCC to 30 days. These decisions are generally best left to the discretion of BOP administrators. [*See* BOP Program Statement 7310.04.] In *Wedelstedt*, the Tenth Circuit noted that the prisoner's remedy was limited only to the BOP being required to *consider* a transfer to a CCC for the last ten percent of his sentence.

> In determining whether Wedelstedt should be transferred, the BOP must consider the factors set forth in 18 U.S.C. §3621(b) without regard to the invalid regulations. **This court, however, takes no position on whether Wedelstedt should be transferred and, as Wedelstedt himself acknowledges, he has no entitlement to such a transfer.** The record on appeal does not indicate whether the sentencing court made any statements recommending that Wedelstedt serve part of his sentence in a CCC, nor is it appropriate for this Court to consider the arguments made in the parties' briefs about Wedelstedt's character.

*Wedelstedt*, 2007 WL 512517, *8 (emphasis added); *see also Elwood v. Jeter*, 386 F.3d at 846 (although the BOP has the *authority* to place a prisoner in an RCC or a CCC for more than the final 10% of his sentence, the BOP is not *required* to do so).[6]

Under §3621(b), the BOP is required to consider all of the relevant factors established in Program Statement 7310.04. These factors include the inmate's institutional behavior, his

---

[6] *Elwood* states as follows:

It [18 U.S.C. § 36249c)] only obligates the BOP to facilitate the prisoner's transition from the prison system. Under § 3621(b), the BOP **may** place a prisoner in a CCC for six months, or more. Under § 3624(c)) the BOP must formulate a plan of pre-release conditions. This plan **may** include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the prisoner's re-entry into the community. **Likewise, the obligation is qualified by the phrase "to the extent practicable."** Security concerns or space limitations in a CCC near the prisoner's home are among the factors that may make it impractical to transfer a prisoner to a CCC for all or even part of the transition period.

*Elwood v. Jeter*, 386 F.3d at 846.

individual needs, existing community resources, and the length of sentence.  *Id.*  Specifically, as to the factor relating to length of sentence,  PS 7310.04 states that, "[o]rdinarily, inmates with shorter sentences do not require maximum CCC placement due to reduced transition needs."[7]

Here, Taylor is serving only a 28-month sentence, which he began serving on December 16, 2007.  According to the SMCD [Record No.2-2, p.16], with good time credits factored into the calculations, his projected satisfaction date is August 29, 2007.  This is less than **nine months** after the date on which he began serving his prison term.  Assuming that Taylor is transferred to an RCC 30 days before August 29, 2007, he will be released from USP-McCreary at the end of July 2007 or the beginning of August 2007.  Based on this information, he in effect will have served only thirty-two percent of his 28-month sentence.  Yet, he complains that he will be placed in an RCC for only thirty days.

Longer placement periods in an RCC or a CCC might be warranted for prisoners who have very long sentences and who are therefore removed from their families and communities for extended periods of time.  In short, these prisoners would typically require a longer time to "adjust" back into a community.  They would, therefore, benefit from a longer time in an RCC.  Here, Taylor's nine month term in a federal prison is not one that requires an extensive adjustment period in an RCC/CCC.

---

[7] , The language in Program Statement 7310.04, §9(a), entitled "CCC Criteria and Referral Guidelines," relates to recommendations for CCC placements "based on assessments of inmate needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly."  *Id.*

Title 18, U.S.C. §3624(c), merely *authorizes* the BOP to allow CCC placement up to six months.[8]  Nothing in the statute  requires or mandates the BOP to place any federal prisoner in a CCC for a full six months prior to their 10% date.  For these reasons, the Court cannot conclude that this Petitioner is "likely" to succeed on the merits.

As to the second factor relating to claims for injunctive relief, Taylor has alleged irreparable injury in that he could be released by the time he would complete the administrative remedy process.  However, he has not shown how the place of service of the last six months of his confinement will injure him at all.  As for the Petitioner's drug abuse problems, there are social resources outside the prison system which can assist his recovery.  As noted above, the Court lacks any concrete statement from the Trial Court that Taylor should participate in a BOP substance abuse program while in prison.  In any event, such a statement if made would merely be a *recommendation* to the Bureau of Prisons – not a directive.

Additionally, well settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison such as a RCC, in any particular length of RCC time, any security classification, or housing assignment.  *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741 (1983);  *Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532 (1976); *Montanye v. Haymes*, 427 U.S. at 242; *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert*.

---

[8]  Title 18 U.S.C. §3624(c) requires that the BOP:

. . . to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, *not to exceed six months*, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

*denied*, 429 U.S. 846 (1976)*; Bolger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.(Tex.) 1995).

Accordingly, Taylor has no due process right to be placed in a an RCC earlier than the date

designated by the BOP.    The Court is unable to conclude that denying Taylor he relief he

requests will result in *irreparable injury*.

Finally, as to the third and fourth factors to be considered in connection with a claim for

injunctive relief, courts are ever cautioned to stay out of the business of micro-managing prisons.

*See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v.*

*Scroggy*, 831 F.2d 135 (6th Cir. 1987).    Given the facts outlined above, the Court is not

convinced that the public interest would be served by interfering with the BOP's discretion in

selecting where this prisoner will spend the rest of his federal sentence and for how long he will

be at any location.

4. Application of *Colton v. Ashcroft* Case

The Court also has considered the Petitioner's reliance on *Colton v. Ashcroft*.[9]   However,

the facts in *Colton* were far different from those presented here.    First, Colton had been

sentenced prior to the change in the BOP's policy in 2002.    *Colton*, 299 F. Supp. 2d at 684.

Second, Colton had been told that he would receive a six-month term in a CCC.    *Id.* at 684-85.

He was then told he would receive a five-month CCC placement term.    *Id.*   He was advised that,

after the change to the "10% Policy," his release to a CCC would be shortened to only 3.8

months.    *Id.* at 685.

_____

[9]  Judge Jennifer B. Coffman of this Court rendered the *Colton* decision on January 14, 2004.

It appears that the Court determined that, given the BOP's prior representations about either a six- or a five-month term in a CCC, Colton had a plausible expectation of a longer term in a CCC. *Id*. at 692-93. The Court granted Colton's request for emergency injunctive relief, which allowed Colton to be released to a CCC immediately.

Here, Taylor was sentenced to a 28-month term of imprisonment in 2006. Thus, he was sentenced long after the adoption of the "10% Policy." Therefore, he has no *Ex Post Facto* claim. Taylor was not promised a longer term in an RCC. He has no liberty interest in – or due process right to – a longer term in an RCC. The distinguishing facts in *Colton* simply render it inapplicable here, and the case does not assist Taylor.

CONCLUSION

The Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1)     Petitioner's "Motion for Temporary Restraining Order and/or Preliminary Injunction" [Record No. 3] is **DENIED**.

(2)     Richard K. Taylor's petition for writ of habeas corpus is **DENIED**. This action will be **DISMISSED**, with prejudice, and stricken from the docket of the Court

(3)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

This 12th day of June, 2007.



Signed By:

*Danny C. Reeves* DCR

United States District Judge