UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| RICHARD K. TAYLOR, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 6: 07-189-DCR |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| D.L. STINE, Warden, ) | **AND ORDER** |
| ) | |
| Respondent. ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is pending for consideration of the Petitioner's "Motion to Amend . . . Findings and Expand as Well as Relief From Judgment." [Record No. 10] For the reasons discussed below, the Court will deny this motion.

PROCEDURAL HISTORY

1. §2241 Petition

Petitioner Richard Taylor filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241, naming Donald L. Stine, Warden of United States Penitentiary McCreary ("USP-McCreary") as the Respondent.[1] In his petition and separately-filed motion seeking preliminary injunctive relief, Taylor requested entry of an order directing Warden Stine to immediately release him to a Residential Re-Entry Center ("RRC").

---

[1] Taylor is confined in the United States Penitentiary McCreary ("USP-McCreary") located in Pine Knot, Kentucky.

-1-

Petitioner Taylor claimed that USP-McCreary staff failed to provide him with information about (1) participation in a BOP-operated drug program and (2) earlier transfer into an RRC. He asserted that once he learned about the availability of RRC placement, USP-McCreary staff unreasonably delayed processing the paperwork necessary for him to obtain earlier entry into an RRC. Taylor complained that the BOP will allow him only approximately thirty (30) days in an RRC before August 29, 2007, which is his projected statutory release date. Taylor asserts that he was entitled to more time in an RRC; that the BOP's current policy of limiting prisoners' time in an RRC is unconstitutional. Further, he contends that even under a 10% rule, he was not being allowed to serve a full 10% of his 28-month sentence in an RRC. Finally, the Petitioner claimed that when the district judge sentenced him to serve his 28-month term of imprisonment for Counterfeiting and Identity Theft on December 13, 2006, he specifically ordered the Petitioner to participate in a drug abuse program operated by the BOP.[2] However, the Petitioner did not attach copy of his sentencing transcript.

## 2. The Opinion and Order

On June 12, 2007, this Court entered a Memorandum Opinion and Order [Record No.6] ("the Opinion and Order") denying Taylor's motion for preliminary injunction and dismissing the §2241 petition. As discussed in the Opinion and Order, the Petitioner failed to exhaust his administrative remedies as required by established case law and the Bureau of Prisons' ("BOP") regulations. Notwithstanding these deficiencies, the Court addressed the merits of his request for immediate placement in an RRC.

---

[2] *See* United States District Court for the Northern District of Ohio (Cleveland), *United States of America v. Richard K. Taylor*, Criminal Action No. 1: 05-CR-00303-9 (Hon. John R. Adams, presiding).

First, the Court noted that it was not able to electronically view a transcript of the sentencing proceeding. Therefore, it was unable to assign any weight to the Petitioner's claim that the sentencing judge specifically ordered him to participate in a BOP drug program.

Second, the Court determined that the Petitioner had not satisfied the criteria necessary to invoke preliminary injunctive relief. Primarily, the Court determined that Taylor's likelihood of prevailing on the merits of his RRC placement claim was essentially non-existent. The Court cited longstanding case law which holds that a prisoner has no Fifth Amendment liberty interest in any type of pre-release transfer, custody in a particular correctional facility, or tenure *for a specific length* of time in a particular correctional facility.

The Court also noted that the Sixth Circuit has not issued an opinion directly on the subject of the validity of the BOP's current 10% policy and 28 C.F.R. §570. The Court pointed out that while decisions from other jurisdictions questioned the BOP's new policy of limiting time in an RRC to ten percent of the sentence, the remedies fashioned in those cases were narrow.

The Court cited two decisions which discussed the BOP's current 10% policy as set forth in 28 C.F.R. §570. [*See* Opinion and Order, pp. 8-10, discussing *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007), and *Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir. 2004).] The Court noted that these cases specifically state that a prisoner is not entitled to an RRC transfer as a matter of right, and that the BOP is only required to *consider* an inmate for a transfer to a CCC for the last ten percent of his sentence. [*See* Opinion and Order at p. 9.]

Third, *based on the information which the Petitioner provided about his sentence* (date imposed and length of sentence), the Court determined that the Petitioner was only serving a short amount of time in BOP custody (from December 13, 2006, until the end of August, 2007). Given the relatively short sentence imposed – and the even shorter amount of time which the Petitioner will have served after applying good time credits – the Court concluded that the Petitioner had failed to demonstrate any significant need for placement in an RRC earlier than the date set by the BOP. [*See* Opinion and Order at pp. 9-11.]

### 3. Petitioner's Motion to Amend/Correct

Following dismissal of his petition, Taylor filed a vitriolic motion to amend the Opinion and Order, accusing the Court of unfair actions. He further alleged that the undersigned routinely dismissing habeas petitions filed by *other* USP-McCreary inmates without requiring a response from the warden.[3] Citing a passage from Homer's *The Odyssey,* Petitioner likened his (and other USP inmates') plight to that of Sisyphus (Mythical King of Corinth). According to Homer, the God Zeus punished Sisyphus for his trickery. Zeus ordered Sisyphus to roll a huge rock up a steep hill, but before he reached the top of the hill, the rock always escaped and Sisyphus had to begin again.[4]

---

[3]  This is an erroneous assertion. *See e.g., Jerry Lynn High v. D. L. Stine*, London Civil Action No 6: 06-258-DCR (Warden ordered to respond to §2241 petition by Order dated July 24, 2006); *Mark Cloyd v. Warden D. L. Stine*, London Civil Action No. 6: 05-667-DCR (Warden ordered to respond to §2241 petition by Order dated April 24, 2006); and *John David Baker v. Donald Stine*, London Civil Action No. 6: 07-40-DCR (Warden ordered to respond to § 2241 petition by Order dated February 8, 2007).

[4]  "Zeus . . . was the supreme ruler of Mount Olympus and of the Pantheon of gods who resided there. Being the supreme ruler, he upheld law, justice and morals, and this made him the spiritual leader of both gods and men." *See Encyclopedia Mythica*, at www.pantheon.org/articles /z/zeus.html.

"Sisyphus promoted navigation and commerce, but was avaricious and deceitful, violating the laws of hospitality by killing travellers and guests. From Homer onwards, Sisyphus was famed as the craftiest of

Petitioner again complains that exhausting his administrative remedies would have taken too long, would have been futile under the circumstances, and that the Court: (1) misconstrued his prayer for relief; (2) cited cases and statutes which do not address his arguments; (3) failed to properly analyze his §2241 petition; and (4) reached the wrong result. Taylor further explained that he has been in BOP custody since August 22, 2005 – a claim which he did not make in his §2241 petition. Taylor also argues in his motion that he only asks for an order directing Warden Stine to *consider* him for RRC placement under the BOP's pre-2002 policy (which allowed for RRC placement up to six months).

## DISCUSSION

Under Rule 59(e), there are three grounds for a district court to amend its judgment: (1) to accommodate an intervening change in controlling laws; (2) to account for new evidence not available previously; and (3) to correct a clear error of law or to prevent manifest injustice. *Berridge v. Heiser*, 993 F. Supp. 1136, 1146-47 (S.D. Ohio 1997) (citing *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). A Rule 59 motion is not an opportunity to reargue a case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 1998 WL 288685 (6th Cir. June 5, 1998). Applying this standard, Taylor's current motion will be denied.

### 1. Pre-Sentence Custody Credit

Taylor now states that between August 22, 2005, and December 13, 2006 (his sentencing date), he was in pre-sentence custody in the Northeast Ohio Correctional Center in Youngstown,

---

men.(*Odyssey, xi. 593*)." See Encylcopedia Wikpedia.org/wiki/Sisyphus.

Ohio (approximately sixteen months). This assertion appears to be substantiated by the "Sentencing Monitoring Computation Data as of 5-31-07" ("SMCD") which indicates that Taylor received "Total Prior Credit Time" of 483 days. [Record No. 2-2, pp. 15-16].

Under 18 U.S.C. §3585(a), a sentence to a term of imprisonment officially begins on the date the defendant is received into official custody.[5] Here, that date was December 13, 2006. According to the SMCD, the BOP has already credited the one year and four months of service to the Petitioner's 28-month sentence, and has factored same into the calculation of the his projected statutory release date of August 29, 2007. Absent the 483 days of prior credit time, and 109 days of good-time credits [Record No. 2-2, p. 16], the Petitioner's 28-month sentence would not have expired until approximately April 2009. Accordingly, Petitioner's reliance on the fact that he was in pre-sentence custody between August, 2005, and December, 2006, carries little weight. A prisoner cannot seek "double credits" for time already served. *See* 18 U.S.C. §3585(b); *United States v. Wilson*, 503 U.S. at 337; *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir.1993); *Garrett v. Snyder*, 41 Fed. Appx 756, **1 (6th Cir. (Ky.) June 25, 2002) (Not Selected for Publication in the Federal Reporter).

## 2. Longer RRC Term Not Warranted

As discussed in the Opinion and Order, the fact remains that Taylor received a 28-month sentence, a relatively short sentence in comparison to many others handed-down in federal

---

[5] *See* 18 U.S.C. §3585(a) **Commencement of sentence**. –

A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

courts. Petitioner began serving his 28-month sentence on December 13, 2006. He received a year and four months of credit toward his 28-month sentence, and additional good-time credits. At least one other district court in this jurisdiction has reached the same result in a § 2241 proceeding where a federal inmate asserted similar due process claims and demanded earlier placement in an RRC. *See Ahmed v. Attorney General of United States*, 2007 WL 397045 (N.D. Ohio, January 31, 2007). There, prisoner Ahmed received an 18- month federal sentence. The BOP offered Ahmed two months in an RRC, but Ahmed demanded six months under the BOP's prior policy.

The Ohio district court rejected all of Ahmed's claims, particularly his claim that denial of a six month RRC term violated his right to due process of law. "The petitioner has failed to demonstrate to this court if or how his delayed transfer to a CCC would result in an "atypical and significant hardship". . . . The court, therefore, is unable to grant the relief requested given the BOP's broad, virtually unfettered discretion to determine the placement of prisoners." *Ahmed v. Attorney General of United States*, 207 WL 397045, *4 (cites omitted).

The Court stands by its original conclusion that the Petitioner has no compelling need to a longer placement time in an RRC, given a relatively short sentence (28 months) for which he received credit of 492 days. The equities required for awarding injunctive relief simply are not on the Petitioner's side.

### 3. Pre-December, 2002 Policy Analysis

Even if the Court able to direct the BOP to revert to the pre-2002 policy of allowing some federal prisoners **up to** six months in an RRC, the Petitioner would still lack a viable constitutional claim to a longer term in an RRC. Even under pre-December, 2002 policy, the

Petitioner lacked a constitutional or statutory right to RRC placement or any particular condition of RRC placement including length or location. *See Prows v. Federal Bureau of Prisons*, 981 F.2d 466 (10th Cir.1992), *cert. denied*, 510 U.S. 830(1993), a case decided in 1992 under the BOP's previous policy.

In *Prows*, a federal prisoner sought an injunction compelling his placement in a halfway house or CCC on the theory that §3624(c) mandates non-prison placement for federal prisoners prior to their release. The Tenth Circuit rejected the claim.[6] *See also Gambino v. Gerlinski*, 96 F. Supp.2d 456, 459-60 (M.D. Pa. 2000), *aff'd*, 216 F.3d 1075 (3rd Cir. 2000) (unpublished table opinion), in which Gambino argued that 18 U.S.C. §3624(c) required the BOP to provide him with some amount of time, during the last ten percent of his sentence, in pre-release confinement (*e.g.*, a halfway house or home confinement).

The *Gambino* court concluded that §3624(c) does not create a liberty interest because it "refers to no [mandatory] procedures. It is instead a broadly worded statute setting forth a general policy to guide the prison system." *Id.* at 460 (citing *Badea v. Cox*, 931 F.2d 573, 576 (9th Cir.1991)). The court determined that Gambino had failed to state a claim for relief because he had failed to show that his confinement violated the Constitution or any federal law.

---

[6] The court stated in *Prows*:

[w]hile there is mandatory (albeit qualified) language employed in the statute, it relates only to the general direction to facilitate the prisoner's post-release adjustment through establishment of some unspecified pre-release conditions. Nothing in §3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period.

*Id*. at 469 (citing *United States v. Laughlin*, 933 F.2d 786, 789 (9th Cir.1991)).

It appears that Petitioner Taylor misconstrues 18 U.S.C. §3624(c) as calling for a *mandatory* six-month RCC placement. It does not and never has. 18 U.S.C. §3624(c) provides:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, **not to exceed six months**, of the last ten per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's reentry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation Office shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody." (Emphasis added)

Title 18 U.S.C. §3624(c) does not guarantee every inmate incarcerated in the BOP the right to an automatic six-month early release to an RRC. RRC placements are with the discretion of the BOP and may not exceed six months, although RRC time may be *shortened*. The BOP has statutory discretion to determine the place of RRC confinement.

Title 18 of the United States Code, section 3621(b), states:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility . . . the Bureau determines to be appropriate and suitable.

As discussed above, inmate RRC time is solely at the discretion of the BOP. Inmates do not have a constitutional right to placement in a RRC or institution or any particular length of RRC time, or transfer to any particular facility. *See Meachum v. Fano*, 427 U.S. 215; *Olim v. Wakinekona*, 461 U.S. 238; *Montanye v. Haymes*, 427 U.S. 236; and *Ward v. Dyke*, 58 F.3d at 274. Accordingly, application of the old BOP policy does not help Taylor.

### 4. Equal Protection Claim

Taylor claims that the negligent handling of paperwork by USP-McCreary staff caused him not to receive an earlier transfer to an RRC. He claims this negligence violated his right to

equal protection of the law. While lawful imprisonment does deprive convicted prisoners of many rights, *Hudson v. Palmer*, 468 U.S. 517, 524 (1984), inmates still retain limited constitutional protection including the right to equal protection under the laws. *See Lee v. Washington*, 390 U.S. 333, 333-34 (1968). To establish a violation of the Equal Protection Clause, a prisoner must prove that a discriminatory intent or purpose against a disfavored class or excluded group was a factor in an action taken by prison officials. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Arlington Heights*, 429 U.S. at 265-66.

Here, Taylor describes the prison staff's handling of his RRC transfer requests as negligent. First, negligence is far removed from acting with discriminatory intent. Second, the Petitioner points to no other prisoner, or group of prisoners, who may have received more favorable treatment. Therefore, his equal protection claim fails. To the extent that the Petitioner actually intends to argue that he was denied due process, the Court has explained that prisoners have no right, protected by the Fifth Amendment, to RRC placement in any particular place or for any particular amount of time.

### 5. New Regulation Properly Enacted

Taylor also argues that the new policy set forth in 28 U.S.C. §570 was not properly enacted in accordance with the Administrative Procedure Act, 5 U.S.C. § 507. That argument also lacks merit. In response to various decisions which have been critical of the BOP's December, 2002 change in policy, the BOP responded with proposed new regulations in August,

2004, which, at least in part, attempted to deal with the critiques of its application of the OLC Memo. *See Community Confinement*, 69 Fed. Reg. 51,213 (Proposed Aug. 18, 2004).

The proposal stated that the BOP was exercising its discretion by limiting CCC placement to the last ten percent of an inmate's sentence, not to exceed six months. The proposal remained open for comment until October, 2004, and became final on January 10, 2005. *See Community Confinement*, 70 Fed. Reg. 1659 (Jan. 10, 2005). The new regulations became effective February 14, 2005 (the "February 14, 2005 Rule"), and amended the Code of Federal Regulations. *See* 28 C.F.R. §570.21. Specifically, the amended language states that: "The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. §570.21(a). The amended rule allows for exceptions only when other statutes allow for placements exceeding six months or ten percent of the sentence. §570.21(b) (providing examples of potential exceptions – residential substance abuse treatment program, 18 U.S.C. §3621(e)(2)(A), and shock incarceration program, 18 U.S.C. §4046(c)).

Thus, the new regulations were properly promulgated. As noted in the Opinion and Order, some courts in other jurisdictions have disagreed with the policy considerations at play in the new regulation. However, the Sixth Circuit has not issued an opinion on the issue.

### 6. General BOP Authority

As a class, federal prisoners enjoy limited freedoms and are under the control of the BOP. Congress has given federal prison officials full discretion to control the conditions of confinement, vesting the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," 18 U.S.C.

§3621; *Moody v. Daggett*, 429 U.S. at 88 ; *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). Thus, as a general matter, courts should not become involved in "the day-to-day functioning of . . . prisons . . . [as] . . . issues and discretionary decisions . . . are not the business of federal judges." *Meachum v. Fano*, 427 U.S. at 228-29. The Supreme Court has explicitly rejected heightened judicial scrutiny of most prison policies. Rigorous scrutiny, the Court noted, is simply "not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." *Thornburgh v. Abbott*, 490 U.S. 401, 409-10, 109 S. Ct. 1874 (1989); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.") Instead, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 526 (1979).

## CONCLUSION

Being sufficiently advised, it is hereby

**ORDERED** that the Petitioner's "Motion to Amend It's Findings and Expand as well as Relief From Judgment" [Record No. 10] is **DENIED**.

This 27th day of June, 2007.



Signed By:
*Danny C. Reeves* DCR
United States District Judge